**LOCAL FORM FOR A CHAPTER 13 PLAN UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 3015.1 AND ADMINISTRATIVE ORDER NO. 17-04**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

IN RE:

Stephen J. Saxon

S.S.#  xxx-xx-1257
　　　Debtor

and

Melissa L. Saxon

S.S.#  xxx-xx-0715
　　　Joint-Debtor
　　　　　Debtor(s)

_____ /

CASE NO. **18-51343**
CHAPTER 13
JUDGE

| **PLAN SUMMARY** |
| :---: |
| *For informational purposes only.* |

ACP: **36** Months
Minimum Plan Length: **60** Months
Plan payment: $ **809.62** per Month
Minimum dividend to Class 9 Creditors $ **0.00**
Percentage of Tax Refunds committed **0%**

**CHAPTER 13 PLAN**

[ **X** ] Original　　*OR*　　[ ]Pre-Confirmation Modification #

**I.　NOTICES**

**TO CREDITORS: YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN. THIS PLAN MAY BE CONFIRMED AND BECOME BINDING WITHOUT FURTHER NOTICE OR HEARING UNLESS A TIMELY WRITTEN OBJECTION IS FILED. READ THIS DOCUMENT CAREFULLY AND CONSIDER SEEKING THE ADVICE OF AN ATTORNEY.**

| Debtors must check one box on each line to state whether or not the Plan includes each of the following items: | | |
| :--- | :---: | :---: |
| **A.** Nonstandard Provisions set out in Section IV. Under Federal Rule of Bankruptcy Procedure 3015(c), a "nonstandard provision" means a provision that is not otherwise included in the approved form for a Chapter 13 Plan in the Eastern District of Michigan. | ☐ Included | ☒ Not included |

| **B.** | A limit on the amount of a secured claim based on a valuation of the collateral for the claim. | ☒ Included | ☐ Not included |
| :--- | :--- | :---: | :---: |
| **C.** | Avoidance of a security interest or lien. | ☒ Included | ☒ Not included |

- **IF AN ITEM IS CHECKED AS "NOT INCLUDED" OR IF BOTH BOXES ARE CHECKED, THE PROVISION IS VOID EVEN IF OTHERWISE INCLUDED IN THE PLAN.**
- **ANY "NONSTANDARD PROVISION" THAT IS NOT SPECIFICALLY IDENTIFIED IN SECTION IV IS VOID.**
- **IF THIS SECTION I INDICATES THAT THIS PLAN DOES NOT INCLUDE ANY "NONSTANDARD PROVISIONS", ANY "NONSTANDARD PROVISIONS" IN THIS PLAN (INCLUDING ANY OTHERWISE SPECIFICALLY LISTED IN SECTION IV) ARE VOID.**

**THIS PLAN IS SUBJECT TO AND INCORPORATES BY REFERENCE THE ADDITIONAL STANDARD PROVISIONS WHICH MAY BE FOUND AT WWW.13EDM.COM or WWW.MIEB.USCOURTS.GOV OR FROM DEBTOR'S COUNSEL UPON WRITTEN REQUEST.**

**II.　APPLICABLE COMMITMENT PERIOD; PLAN PAYMENTS; PLAN LENGTH; EFFECTIVE DATE AND ELIGIBILITY FOR DISCHARGE:**

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com　　　　　　　　　　　　　　　　　　　　　　　Best Case Bankruptcy

A. ☐ Debtor's Current Monthly Income exceeds the applicable State median income. Debtor's Applicable Commitment Period is 60 months. Debtor's Plan Length shall be 60 months from the date of entry of the Order Confirming Plan.

☒ Debtor's Current Monthly Income is less than or equal to the applicable State median income. Debtor's Applicable Commitment Period is 36 months. Debtor's Plan Length shall be **60** months from the date of entry of the Order Confirming Plan. **This is a minimum Plan length.** If the Plan has not been completed in the minimum Plan length, the Plan length shall be extended as necessary for completion of the requirements of the Plan; provided that in no event will the Plan term continue beyond 60 months from the date of entry of the Order Confirming Plan. *See Paragraph J of the Additional Terms, Conditions and Provisions for additional information regarding Completion of Plan.*

If neither or both of the above boxes is checked, then the Applicable Commitment Period and the Plan Length shall be 60 months from the date of entry of the Order Confirming Plan.

B. Debtor's plan payment amount is **$809.62** per month.

C. Future Tax Refunds. *See Paragraph A of the Additional Terms, Conditions and Provisions for additional information regarding Tax Refunds and Tax Returns.*

---

**FOR CASES ASSIGNED TO BAY CITY DIVISION:** *Check only one box. If none are checked or more than one box is checked, paragraph 2 shall apply:*

1. ☐ Debtor's Plan proposes a 100% dividend to unsecured creditors. Therefore, debtor is not required to remit any future Tax Refunds

2. ☐ Debtor's Plan proposes less than a 100% dividend to unsecured creditors and debtor's Schedule I *does not* include a proration for anticipated Tax Refunds. Debtor will remit 50% of all Federal and State Tax Refunds that debtor receives or is entitled to receive after commencement of the case.

3. ☐ Debtor's Plan proposes less than a 100% dividend to unsecured creditors and debtor's Schedule I *includes* a proration for anticipated Federal Tax Refunds. Debtor will remit 100% of all Federal and State Tax Refunds that debtor receives or is entitled to receive after commencement of the case to the extent the Refund exceeds the sum of twelve times the amount of the Federal and State Tax Refund pro-ration shown in Schedule I.

---

**FOR CASES ASSIGNED TO DETROIT DIVISION:** *Check only one box. If none are checked or more than one box is checked, paragraph 2 shall apply:*

1. ☒ Debtor's Plan proposes a 100% dividend to unsecured creditors. Therefore, debtor is not required to remit any future Tax Refunds.

2. ☐ Debtor's Plan proposes less than a 100% dividend to unsecured creditors and debtor's Schedule I *does not* include a proration for anticipated Tax Refunds. Debtor will remit 100% of all Federal Tax Refunds that debtor receives or is entitled to receive after commencement of the case.

3. ☐ Debtor's Plan proposes less than a 100% dividend to unsecured creditors and debtor's Schedule I *includes* a proration for anticipated Federal Tax Refunds. Debtor will remit 100% of all Federal Tax Refunds that debtor receives or is entitled to receive after commencement of the case to the extent the Refund exceeds the sum of twelve times the amount of the Federal Tax Refund pro-ration shown in Schedule I.

---

**FOR CASES ASSIGNED TO FLINT DIVISION:** *Check only one box. If none are checked or more than one box is checked, paragraph 2 shall apply:*

1. ☐ Debtor's Plan proposes a 100% dividend to unsecured creditors. Therefore, debtor is not required to remit any future tax refunds.

2. ☐ Debtor's Plan proposes less than a 100% dividend to unsecured creditors and debtor's Schedule I *does not* include a pro-ration for anticipated tax refunds. Debtor will remit 100% of all Federal Tax Refunds that Debtor receives or is entitled to receive after commencement of the case.

---

3. ☐ Debtor's Plan proposes less than a 100% dividend to unsecured creditors and debtor's Schedule I *includes* a proration for anticipated Federal Tax Refunds. Debtor is not required to remit Federal Tax Refunds in excess of the amount of the proration shown on Schedule I.

**D.** ☒ If the box to the immediate left is "checked", the debtor acknowledges that debtor **is not** eligible for a discharge pursuant to 11 USC §1328.

☒ If the box to the immediate left is "checked", the joint debtor acknowledges that joint debtor **is not** eligible for a discharge pursuant to 11 USC §1328.

**E.** ☐ If the box to the immediate left is "checked", the debtor or joint debtor is self-employed **AND** incurs trade credit in the production of income from such employment. Debtor shall comply with the requirements of Title 11, United States Code, and all applicable Local Bankruptcy Rules regarding operation of the business and duties imposed upon the debtor.

**III. DESIGNATION AND TREATMENT OF CLASSES OF CLAIMS:** *See Paragraph F of the Additional Terms, Conditions and Provisions for additional information regarding the order in which claims are to be paid.*

**A. Class One – TRUSTEE FEES** as determined by statute.

**B. Class Two – ADMINISTRATIVE CLAIMS, INCLUDING ATTORNEYS FEES AND COSTS:**

  **1. PRE-CONFIRMATION ATTORNEY FEES:** At confirmation of the Plan, Counsel shall elect to either:

  a.  In lieu of filing a separate fee application pursuant to 11 USC §327 and §330, accept the sum of $ __3,500.00__ for services rendered plus $ __0.00__ for costs advanced by Counsel, for total Attorney Fees and Costs of $ __3,500.00__ through the Effective Date of the Plan. The total Attorney Fees and Costs less the sum paid to Counsel prior to the commencement of this case as reflected in the Rule 2016(b) Statement leaving a net balance due of $ __3,025.00__, will be paid as an Administrative Expense Claim; **or**

  b.  Request an award of compensation for services rendered and recovery of costs advanced by filing a separate Application for Compensation for services rendered up through the date of entry of the Order Confirming Plan pursuant to 11 USC §327 and §330. If Counsel elects to file a fee application pursuant to this sub-paragraph, the Trustee shall escrow $3,000.00 for this purpose. *See Paragraph B of the Additional Terms, Conditions and Provisions for additional information.*

  **2. POST-CONFIRMATION ATTORNEY FEES:** *See Paragraph D of the Additional Terms, Conditions and Provisions for additional information.*

  **3. RETENTION OF OTHER PROFESSIONALS FOR POST-PETITION SERVICES:** Debtor ☐ has retained or ☐ intends to retain the services of (name of person to be retained) as (capacity or purpose for retention) to perform professional services post-petition with fees and expenses of the professional to be paid as an Administrative Expense. *See Paragraph C of the Additional Terms, Conditions and Provisions for additional information.*

  **4. OTHER ADMINISTRATIVE EXPENSE CLAIMS:** Any administrative expense claims approved by Order of Court pursuant to 11 USC §503 shall be paid as a Class Two administrative claim. *See Paragraph E of the Additional Terms, Conditions and Provisions for additional information.*

**C. CLASS THREE – SECURED CLAIMS TO BE STRIPPED OR AVOIDED FROM THE COLLATERAL AND TREATED AS UNSECURED CLAIMS TO BE PAID BY TRUSTEE.** *See Paragraph G and Paragraph N of the Additional Terms, Conditions and Provisions for additional information.*

**Class 3.1 Liens to be Stripped. 11 USC §506(a).**

| Creditor | Collateral |
|---|---|
| CitiFinancial | 9076 Butternut Whitmore Lake, MI 48189 |
| PNC (originally National City) | 9076 Butternut Whitmore Lake, MI 48189 |

**Class 3.2 Judicial Liens and Non-Possessory, Non-Purchase Money Liens to be Avoided. 11 USC §522(f).**

| Creditor | Collateral |
|---|---|
| -NONE- | |

**D. CLASS FOUR - SECURED CLAIMS ON WHICH THE LAST CONTRACTUAL PAYMENT IS DUE BEYOND THE LENGTH OF THE PLAN. 11 USC §1322(b)(5).**

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

**Class 4.1** Continuing Payments on a claim secured by the debtor's principal residence that come due on and after the date of the Order for Relief. *(See Paragraph P, Paragraph L and Paragraph EE of the Additional Terms, Conditions and Provisions for additional information).*

| Creditor | Collateral | Monthly Payment | Direct or Via Trustee |
|---|---|---|---|
| CitiMortgage | 9076 Butternut Whitmore Lake, MI 48189 | 725.00 [Debtors are seeking a mortgage modification and don't know what the monthly payment will be if successful] | Trustee |

**Class 4.2** Pre-Petition Arrearages on a claim secured by the debtor's principal residence to be paid by Trustee: Those amounts which were due as of the filing of the Order for Relief:

| Creditor | Collateral | Arrears Amount | Estimated Average Monthly Payment | Months to Cure From Confirmation Date |
|---|---|---|---|---|
| CitiMortgage | 9076 Butternut Whitmore Lake, MI 48189 | 0.0 [Debtors hoping to forgive any delinquency through a Mortgage Modification] | 0.00 | 0.00 |

**Class 4.3** Continuing Payments other than on a claim secured by the debtor's principal residence that come due on and after the date of the Order for Relief. *(See Paragraph P, Paragraph L and Paragraph EE of the Additional Terms, Conditions and Provisions for additional information).*

| Creditor | Collateral | Monthly Payment | Direct or Via Trustee |
|---|---|---|---|
| -NONE- | | | |

**Class 4.4** Pre-Petition Arrearages other than on a claim secured by the debtor's principal residence to be paid by Trustee: Those amounts which were due as of the filing of the Order for Relief:

| Creditor | Collateral | Arrears Amount | Estimated Average Monthly Payment | Months to Cure From Confirmation Date |
|---|---|---|---|---|
| -NONE- | | | | |

**E. CLASS FIVE - SECURED CLAIMS ON WHICH THE LAST PAYMENT WILL BECOME DUE WITHIN THE PLAN DURATION.** *(See Paragraph H, Paragraph L, Paragraph O, and Paragraph S of the Additional Terms, Conditions and Provisions for additional information).*

**Class 5.1.** Secured Claims not excluded from 11 USC §506 to be paid Equal Monthly Payments. 11 USC §1325(a)(5)(B):

| Creditor/Collateral | Indicate if "crammed" *** or modified | Interest rate (Present Value Rate) | Total to be paid Including Interest | Monthly Payment | Direct or Via Trustee |
|---|---|---|---|---|---|
| Credit Union One/2015 Prime Time Avenger | | per contract | per contract | 213.00 [per contract] | Direct |

**\*\*\* See debtor's Schedule A/B for more information about values.**

**Class 5.2.** Secured Claims not excluded from 11 USC §506 *not* to be paid Equal Monthly Payments. 11 USC §1325(a)(5)(B):

Local Form 10-24-17 V 1

4

Best Case Bankruptcy

| Creditor/Collateral | Indicate if "crammed"***or modified | Interest rate (Present Value Rate) | Total to be paid including interest | Estimated Average Monthly Payment | Direct or Via Trustee |
|---|---|---|---|---|---|
| -NONE-/ | | | | | |

**\*\*\* See debtor's Schedule A/B for more information about values.**

**Class 5.3. Secured claims excluded from 11 USC §506 by the "hanging paragraph" at the end of 11 USC §1325(a)(9) to be paid "Equal Monthly Payments". 11 USC §1325(a)(5)(B).**

| Creditor/Collateral | Indicate if "modified | Interest rate (Present Value Rate) | Total to be paid Including interest | Monthly Payment | Direct or Via Trustee |
|---|---|---|---|---|---|
| **Michigan Homeowner Assistance NHC/9076 Butternut Whitmore Lake, MI 48189** | per contract | **0.00%** per contract | **0.00** per contract | **0.00** per contract | **Direct** |

**Class 5.4. Secured claims excluded from 11 USC §506 by the "hanging paragraph" at the end of 11 USC §1325(a)(9)** *not* **to be paid Equal Monthly Payments. 11 USC §1325(a)(5)(B).**

| Creditor/Collateral | Indicate if "modified | Interest rate (Present Value Rate) | Total to be paid Including interest | Estimated Average Monthly Payment | Direct or Via Trustee |
|---|---|---|---|---|---|
| -NONE-/ | | | | | |

**Class 5.5. Surrender of collateral.** *(See Paragraph P of the Additional Terms, Conditions and Provisions for additional information).*

The debtor(s) surrenders debtor's interest in the following collateral. Any allowed unsecured claim remaining after disposition of the collateral will be treated as a Class 9 General Unsecured Creditor.

| Creditor Name | Description of Collateral |
|---|---|
| -NONE- | |

**F. CLASS SIX – EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES. 11 USC §§365, 1322(b)(7): Debtor assumes the executory contracts and unexpired leases listed in subparagraph 1.** *(See Paragraph K of the Additional Terms, Conditions and Provisions for additional information).*

**Class 6.1. Continuing Lease/Contract Payments:**

| Creditor | Property | Monthly Payment | Lease/Contract expiration date | Direct or Via Trustee |
|---|---|---|---|---|
| -NONE- | | | | |

**Class 6.2. Pre-petition Arrearages on Assumed Executory Contracts and Leases** *(to be paid by Trustee)*:

| Creditor | Property | Arrears Amount | Estimated Average Monthly Payment | Months to Cure From Confirmation Date |
|---|---|---|---|---|
| -NONE- | | | | |

**Class 6.3. Debtor rejects the executory contracts and unexpired leases listed in this subparagraph 3. Any unexpired lease or executory contract that is neither expressly assumed in Class 6.1 above or expressly rejected below shall be deemed rejected as of the date of confirmation of debtor's chapter 13 plan to the same extent as if that unexpired lease or executory contract was listed below.** *(See Paragraph K of the Additional Terms, Conditions and Provisions for additional information):*

Local Form 10-24-17 V 1

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Creditor | Property |
|---|---|
| -NONE- | |

G. **CLASS SEVEN – PRIORITY UNSECURED CLAIMS. 11 USC §§507, 1322(a)(2).**

Class 7.1. Domestic Support Obligations: Continuing Payments that come due on and after the date of the Order for Relief:

| Creditor | Monthly Payment | Direct or Via Trustee |
|---|---|---|
| -NONE- | | |

Class 7.2. Domestic Support Obligations: Pre-Petition Arrearages due as of the filing of the Order for Relief:

| Creditor | Arrears Amount | Estimated Average Monthly Payment | Direct or Via Trustee |
|---|---|---|---|
| -NONE- | | | |

Class 7.3. All Other Priority Unsecured Claims [11 U.S.C. §1322(a)(2)]

| Creditor | Amount | Direct or Via Trustee |
|---|---|---|
| IRS | 0.00 | Trustee |
| State of Michigan | 0.00 | Trustee |

H. **CLASS EIGHT – SEPARATELY CLASSIFIED UNSECURED CLAIMS. 11 USC §1322(b)(1):** *(To be paid by Trustee): (See Paragraph M of the Additional Terms, Conditions and Provisions for additional information):*

| Creditor | Amount | Interest Rate | Reason for Special Treatment |
|---|---|---|---|
| -NONE- | | | |

I. **CLASS NINE - GENERAL UNSECURED CLAIMS** *(to be paid by Trustee): – See Paragraph N of the Additional Terms, Conditions and Provisions for additional information.*

☐ This Plan shall provide a total sum for distribution to creditors holding Class 9 General Unsecured claims in an amount that is not less than the Amount Available in Chapter 7 shown on Attachment 1, Liquidation Analysis and Statement of Value of Encumbered Property (the "Unsecured Base Amount"). This Plan shall provide either (i) the Unsecured Base Amount; or (ii) will continue for the full Plan Length as indicated in Paragraph II.A of this Plan, whichever yields the greater payment to Class 9 Unsecured Creditors. *See Attachment 2, Chapter 13 Model Worksheet, Line 8, for additional information concerning funds estimated to be available for payment to Class 9 Unsecured Creditors.*

☒ This Plan shall provide a dividend to holders of Class 9 General Unsecured Claims equal to 100% of allowed claims.

If neither box is checked or if both boxes are checked, then the plan shall pay the Unsecured Base Amount.

☒ If the box to the immediate left is "checked", creditors holding claims in Class Seven, Eight and Nine shall receive interest on their allowed claims at the rate of **3.00%** per annum as required by 11 USC §1325(a)(4).

IV. **Nonstandard Plan Provisions:**

> • **ANY "NONSTANDARD PROVISION" THAT IS NOT BOTH INCLUDED IN SECTION 1.A AND SPECIFICALLY STATED IN THIS SECTION IS VOID.**

Debtors' principle residence located at 9076 Butternut Road, Whitmore Lake, MI 48189 is worth around $161,000 [based on the State Equalized Value and comparable sales]. Debtors' Residence has four secured mortgages on it. The first mortgage is held by CitiMortgage. The amount owed to CitiMortgage is about $181,186.59. This leaves the mortgages held by CitiFinancial, PNC, and Michigan Step Forward unsecured. **This Plan seeks to Strip the unsecured Mortgage Liens of CitiFinancial and National City [now PNC] as follows:**

A. Upon completion of the Debtors' Chapter 13 Plan and the entry of a Chapter 13 discharge order in bankruptcy case number **18-51343**, the mortgage dated November 17, 2006 [Original Lender

Local Form 10-24-17 V 1

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                              Best Case Bankruptcy

CitiFinancial]; Recorded in Washtenaw County on November 22, 2006 (L-4593 P-797); loan for $20,356.46; covering the following described property situated in the Township of Northfield, County of Washtenaw, State of Michigan, and further described as follows:

LOTS 1011, 1012, 1013, AND 1014 WHITMORE LAKE SUMMER HOMES SUBD'N ACCORDING TO THE RECORDED PLAT THEREOF AS RECORDED IN LIBER 4 OF PLATS PAGE 6 WASHTENAW COUNTY RECORDS

Commonly Known As: 9076 Butternut Road, Whitmore Lake, MI 48189

Parcel Tax ID: B-02-05-383-002

**shall be stripped from the Property and discharged.**

B. Upon completion of Debtors' Chapter 13 Plan and the entry of a Chapter 13 Discharge Order in bankruptcy case number **18-51343**, Debtors may record a certified copy of the Order Confirming Plan, with a copy of Debtors' Chapter 13 Discharge Order attached, with the Washtenaw County Register of Deeds, which will constitute and effectuate the Discharge of the Mortgage [dated November 17, 2006 [Original Lender CitiFinancial]; Recorded in Washtenaw County on November 22, 2006 (L-4593 P-797); loan for $20,356.46].

---

C. Upon completion of the Debtors' Chapter 13 plan and the entry of a Chapter 13 discharge order in bankruptcy case number **18-51343**, the mortgage ("Mortgage") dated April 04, 2007 [Original Lender National City]; Recorded in Washtenaw County on May 09, 2007 (L-4624 P-235); loan for $10,000], covering the following described property ("Property") situated in the Township of Northfield, County of Washtenaw, State of Michigan, and further described as follows:

LOTS 1011, 1012, 1013, AND 1014 WHITMORE LAKE SUMMER HOMES SUBD'N ACCORDING TO THE RECORDED PLAT THEREOF AS RECORDED IN LIBER 4 OF PLATS PAGE 6 WASHTENAW COUNTY RECORDS

Commonly Known As: 9076 Butternut Road, Whitmore Lake, MI 48189

Parcel Tax ID: B-02-05-383-002

**shall be stripped from the Property and discharged.**

D. Upon completion of Debtors' Chapter 13 Plan and the entry of a Chapter 13 Discharge Order in bankruptcy case number **18-51343**, Debtors may record a certified copy of the Order Confirming Plan, with a copy of Debtors' Chapter 13 Discharge Order attached, with the Washtenaw County

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

Register of Deeds, which will constitute and effectuate the Discharge of the ("Mortgage") dated April 04, 2007 [Original Lender National City]; Recorded in Washtenaw County on May 09, 2007 (L-4624 P-235); loan for $10,000].

E. The last sentence of Section, V.G has been changed to read, "If the creditor fails to do so, the Debtor may file in the applicable Public Records certified copies of the Order Confirming Plan along with the Discharge Order, which would effectuate the Discharge of the Lien. Alternatively, Debtor may file a motion for an order declaring that the lien has been satisfied by completion of the confirmed Plan, which the Debtor may then have certified and recorded in the applicable Public Records."

---

I, <u>Thomas Paluchniak P70284</u>, Attorney for Debtor (or Debtor if not represented by an attorney), certify that this Plan contains no "Nonstandard Provisions" other than those set out in Section IV above.

| | |
|---|---|
| /s/ Thomas Paluchniak | /s/ Stephen J. Saxon |
| **Thomas Paluchniak P70284** | **Stephen J. Saxon** |
| Attorney for Debtor | Debtor |
| **700 Towner Street** | |
| **Ypsilanti, MI 48198** | |
| Street Address | /s/ Melissa L. Saxon |
| **Ypsilanti, MI 48198-0000** | **Melissa L. Saxon** |
| City, State and Zip Code | Joint Debtor |
| wbabut@babutlaw.com | |
| E-Mail Address | **August 8, 2018** |
| **(734) 485-7000** | Date |
| Phone Number | |

Local Form 10-24-17 V 1

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

## ATTACHMENT 1

### LIQUIDATION ANALYSIS AND STATEMENT OF VALUE OF ENCUMBERED PROPERTY:

| TYPE OF PROPERTY | FAIR MARKET VALUE | LIENS | DEBTOR'S SHARE OF EQUITY | EXEMPT AMOUNT | NON-EXEMPT AMOUNT |
|---|---|---|---|---|---|
| **PERSONAL RESIDENCE** | | | | | |
| 9076 Butternut Whitmore Lake, MI 48189 Washtenaw County 9076 Butternut Rd., Whitmore Lake, MI 48189 | 119,000.00 | 224,840.71 | 0.00 | 0.00 | 0.00 |
| **PERSONAL RESIDENCE (total)** | 119,000.00 | 224,840.71 | 0.00 | 0.00 | 0.00 |
| **REAL ESTATE OTHER THAN PERSONAL RESIDENCE** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **HHG/PERSONAL EFFECTS** | | | | | |
| Living and Dining room, bedroom, kitchen furniture & utensils. | 3,000.00 | 0.00 | 3,000.00 | 3,000.00 | 0.00 |
| **HHG/PERSONAL EFFECTS (total)** | 5,000.00 | 0.00 | 5,000.00 | 5,000.00 | 0.00 |
| **JEWELRY** | | | | | |
| Jewelry (various) at Debtors' residence. | 2,000.00 | 0.00 | 2,000.00 | 2,000.00 | 0.00 |
| **JEWELRY (total)** | 2,000.00 | 0.00 | 2,000.00 | 2,000.00 | 0.00 |
| **CASH/BANK ACCOUNTS** | | | | | |
| Cash on Debtors' Persons [estimate]. | 100.00 | 0.00 | 100.00 | 100.00 | 0.00 |
| **CASH/BANK ACCOUNTS (total)** | 220.00 | 0.00 | 220.00 | 220.00 | 0.00 |
| **VEHICLES** | | | | | |
| 2014 Kia Sorrenta 51000 miles | 6,500.00 | 0.00 | 6,500.00 | 6,500.00 | 0.00 |

Local Form 10-24-17 V 1

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

| | | | | | |
|---|---|---|---|---|---|
| **2003 Ford F150 102000 miles** | 2,000.00 | 0.00 | 2,000.00 | 2,000.00 | 0.00 |
| **2015 Prime Time Avenger** | 13,000.00 | 17,000.00 | 0.00 | 0.00 | 0.00 |
| **VEHICLES (total)** | 21,500.00 | 17,000.00 | 8,500.00 | 8,500.00 | 0.00 |
| **OTHER (*itemize*)** | | | | | |
| **403(b) [estimate]: University of Michigan** | 17,803.00 | 0.00 | 17,803.00 | 17,803.00 | 0.00 |
| **Federal, State [estimate]: Partial interest in potential 2017 income tax return.** | 10,000.00 | 0.00 | 7,500.00 | 7,500.00 | 0.00 |
| **OTHER (total)** | 27,803.00 | 0.00 | 25,303.00 | 25,303.00 | 0.00 |

Amount available upon liquidation............................................................................. $ _____ 0.00

Less administrative expenses and costs .................................................................. $ _____ 0.00

Less priority claims................................................................................................. $ _____ 0.00

Amount Available in Chapter 7 ............................................................................... $ _____ 0.00

Local Form 10-24-17 V 1

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

18-51343-mar    Doc 18    Filed 08/29/18    Entered 08/29/18 17:28:02    Page 10 of 35

## ATTACHMENT 2

CHAPTER 13 MODEL WORKSHEET
LOCAL BANKRUPTCY RULE 3015-1(B)(2) E.D.M

1. Proposed length of Plan: __**60**__ months

2. Initial Plan Payment:
   $809.62 per month x **60** months = **$50,541.00** (subtotal)

3. Additional Payments: $ _____ per=$(subtotal)

4. Lump sums payments — $0.00

5. Total to be paid into Plan (total of lines 2 through 4) — $50,541.00

6. Estimated disbursements other than to Class 9 General Unsecured Creditors

   a. Estimated Trustee Fees — $3,790.80

   b. Estimated Attorney Fees and costs through confirmation of plan — $3,025.00

   c. Estimated Attorney Fees and costs post-confirmation through duration of Plan — $250.00

   d. Estimated fees of other Professionals — $0.00

   e. Total mortgage and other continuing secured debt payments — $43,500.00

   f. Total non-continuing secured debt payments (including interest) — $0.00

   g. Total priority claims — $0.00

   h. Total arrearage claims — $0.00

7. Total disbursements other than to Class 9 General Unsecured Creditors (Total of lines 6.a through 6.h) — $ 50,540.80

8. Funds *estimated* to be available for Class 9 General Unsecured Creditors (Line 5 minus Line 7) — $ 0.20

9. Estimated dividend to Class 9 General Unsecured Creditors in Chapter 7 proceeding (see Liquidation Analysis on page 6) — $ 0.00

COMMENTS:

**Debtors filed bankruptcy to try and save their home. They are trying to obtain a mortgage modification from their first mortgage holder [CitiFinancial]. They also have mortgages with PNC [formerly National City], CitiMortgage, and Step forward. Step Ford's mortgage doesn't require payment. Debtors content CitiMortgage and PNC's mortgages are unsecured.**

Local Form 10-24-17 V 1

11

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

```
┌─────────────────────────────────────────────────────┐
│              V. ADDITIONAL STANDARD PROVISIONS        │
│                                                       │
│      THE FOLLOWING STANDARD PROVISIONS ARE APPLICABLE TO │
│      ALL PLANS AND PRE-CONFIRMATION MODIFIED PLANS FILED ON │
│          OR AFTER DECEMBER 1, 2017, IN THE UNITED STATES │
│       BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF MICHIGAN │
└─────────────────────────────────────────────────────┘
```

A.    **DEBTOR'S OBLIGATION TO REMIT TAX REFUNDS:** Debtor shall not alter any withholding deductions/exemptions without Court approval. If the Internal Revenue Service or any State taxing authority remits to the Trustee any sum which the debtor is not required to remit pursuant to this Plan, then upon written request of the debtor and concurrence of the Trustee, the Trustee shall be authorized to refund those sums to the debtor from funds first available without further motion, notice or Order of Court. The Trustee shall not be required to recoup or recover funds disbursed to creditors prior to receipt of the debtor's written request.

If debtor is married and debtor's spouse is not a joint-debtor in this case, debtor's Tax Refund(s) for any calendar year shall be 50% of the aggregate net Tax Refunds received by debtor and debtor's Non-filing spouse, regardless of whether debtor and spouse file a joint tax return or file separate tax returns.

B.    **ALLOWANCE AND PAYMENT OF PRE-CONFIRMATION ATTORNEY FEES:** If Class 2.1 of the Plan indicates that Counsel intends to file a Separate Application for compensation for services rendered up through the date of entry of the Order Confirming Plan pursuant to 11 USC §327 and §330, the Trustee shall withhold the amount designated in Class 2.1 from funds remaining after payment of claims required to be paid prior to attorney fees pending further Order of Court.

C.    **RETENTION AND COMPENSATION OF OTHER PROFESSIONALS FOR POST-PETITION PRE-CONFIRMATION SERVICES**: If Class 2.3 indicates that debtor has retained or intends to retain the services of any Professional (as that term is defined in 11 USC §327) to perform professional services after the commencement of this case, debtor will file a timely Application to Employ Professional Person stating the identity of the person to be retained and the capacity or purpose for retention, accompanied by a Certification of Disinterestedness signed by the Professional and obtain Court permission to retain the Professional. The Professional may seek compensation in an amount not to exceed $400.00 by filing a Proof of Claim designated as an Administrative Expense without further notice, hearing or Order of Court. If the Professional seeks compensation in excess of $400.00, the Professional shall file an Application for Compensation for services rendered pursuant to 11 USC §327.

D.    **POST-CONFIRMATION ATTORNEY FEES & COSTS BY SEPARATE APPLICATION:** Counsel reserves the right to file Applications for compensation for services rendered subsequent to the Confirmation of this Plan. Upon entry of an Order Awarding Post Confirmation Attorney Fees, if Debtor's Plan will not complete within 60 months of the date of the Order Confirming Plan, all unpaid Attorney fees and costs shall be paid by the Trustee only after a plan modification that allows Debtor's Plan to complete within 60 months from the date of the Order Confirming Plan is approved with notice as is appropriate to the parties interested.

E.    **PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS:** Administrative Expense Claims as defined in 11 USC §503, other than those claims provided for in Paragraphs B, C and D of these Additional Terms, Conditions and Provisions, will be deemed allowed and will be paid only upon entry of a specific Order of this Court determining the allowance and amount of that claim.

F.    **ORDER OF PAYMENT OF CLAIMS:** All claims for which this Plan proposes payment through the Trustee shall be paid in the following order to the extent that funds are available:

        Level 1: Class 1
        Level 2: Class 5.1, 5.3 and 6.1
        Level 3: Class 2.1 and 2.3
        Level 4: Class 2.2 and 2.4
        Level 5: Classes 4.1 and 4.3
        Level 6: Classes 4.2, 4.4, 5.2, 5.4 and 6.2
        Level 7: Class 7
        Level 8: Classes 3.1, 3.2, 5.5, 6.3, 8 and 9.

Local Form 10-24-17 V 1

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

Each level shall be paid as provided in this Plan before any disbursements are made to any subordinate class. If there are not sufficient funds to pay all claims within a level, then the claims in that level shall be paid *pro rata.*

G. **SECURED CLAIMS TO BE STRIPPED OR AVOIDED FROM THE COLLATERAL AND TREATED AS UNSECURED:** Claims for which the creditor holds a lien that is listed as "Stripped" in Class 3.1 or "Avoided" in Class 3.2 are avoided and will be paid as a General Unsecured Creditor as provided in Class 9 of the Plan. Upon completion of the Plan, the creditor will record a Satisfaction of the Lien in the applicable Public Records to discharge and release the lien. If the creditor fails to do so, the Debtor may file in the applicable Public Records certified copies of the Order Confirming Plan along with the Discharge Order, which would effectuate the Discharge of the Lien. Alternatively, Debtor may file a motion for an order declaring that the lien has been satisfied by completion of the confirmed Plan, which the Debtor may then have certified and recorded in the applicable Public Records.

H. **CLASS 5.1, CLASS 5.3 AND CLASS 6.1 CREDITORS SPECIFIED TO RECEIVE EQUAL MONTHLY PAYMENTS:** Creditors identified in Class 5.1, Class 5.3, and Class 6.1 will receive Equal Monthly Payments to the extent funds are available at the date of each disbursement. If more than one creditor is scheduled in Class 5.1, Class 5.3, and Class 6.1 and the funds available in any disbursement are insufficient to pay the full Equal Monthly Payments to all of the listed creditors, payments shall be made on a *pro rata* basis determined by the ratio of the Equal Monthly Payment specified to each creditor to the total amount of Equal Monthly Payments to all creditors scheduled in Class 5.1, Class 5.3, and Class 6.1. The amount of the Equal Monthly Payment to any creditor shall be the amount stated in Class 5.1, Class 5.3, and Class 6.1 as may be applicable and the amount of the Equal Monthly Payment specified in the Plan will supersede any monthly payment amount specified in a Proof of Claim at variance with the Equal Monthly Payment amount set forth in the Plan unless otherwise Ordered by the Court.

The monthly post-confirmation disbursement to any creditor designated in Class 5.1, Class 5.3, and Class 6.1 will not exceed the Equal Monthly Payment amount for that creditor for the month in which disbursement is being made plus any previously unpaid Equal Monthly Payments accruing before the date of disbursement.

I. **APPLICATION OF DISBURSEMENTS BY CREDITORS:** Creditors shall apply all disbursements under the Plan only in the manner consistent with the terms of the Plan and to the account(s) or obligation(s) as designated on the voucher or check provided to the Creditor with each disbursement.

J. **COMPLETION OF PLAN:** For purposes of 11 USC §1328, the debtor shall be deemed to have completed all payments under the Plan:

1. Upon the expiration of the Plan Length as defined in Paragraph II.A of the Plan commencing on the date of entry of the Order Confirming Plan; *and*

2. Debtor has remitted all Plan payments (as defined in Paragraph II.A and II.B of the Plan) coming due after the date of entry of the Order Confirming Plan; *and*

3. Debtor has remitted all Federal Income Tax Refunds as required by Paragraph II.C of the Plan and Paragraph A of these Additional Terms, Conditions and Provisions; *and*

4. Debtor has remitted a sum sufficient to pay all allowed claims as amended and/or supplemented as provided in the Plan.

K. **EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES:**

1. Any executory contract or unexpired lease not expressly assumed in Class 6.1 or in the Order Confirming Plan shall be deemed rejected effective as of the Effective Date of this Plan.

2. Upon rejection of any Executory Contract or Unexpired Lease, the property and debtor's interest in the rejected executory contract or unexpired lease will no longer be property of the estate and the stay under 11 USC §362(a) and the co-debtor stay under 11 USC §1301 shall automatically terminate as to such property. Any claims arising from the rejection of an executory contract or unexpired lease shall be treated as a general unsecured claim in Class Nine, subject to further Order of Court.

Local Form 10-24-17 V 1

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

3. For all assumed executory contracts and unexpired leases, confirmation of this Plan shall constitute a finding that this Plan complies with all requirements for assumption of the executory contracts and unexpired leases being assumed, including all requirements set forth in 11 USC §365(b).

4. Upon the termination of the Lease (whether as a result of the expiration of the contractual lease term, repossession of the property which is the subject of the Lease, or otherwise), the Lessor shall have the right to file a Supplemental Claim for any damages or charges permitted under or pursuant to the Lease.

5. If Class 6.1 provides for the Continuing Lease/Contract Payments to be made by the Trustee, the Supplemental Claim as filed and allowed shall be paid by the Trustee over the remaining term of the Plan.

6. If Class 6.1 provides for the Continuing Lease Payments to be made directly by the Debtor to the Lessor, the Supplemental Claim as filed and allowed shall be paid directly by the Debtor to the Creditor over the remaining term of the Plan. If there is a balance outstanding on the Supplemental Claim as of the completion of Debtor's confirmed Chapter 13 Plan, this balance shall not prevent or preclude the entry of a discharge in this case; instead, this balance shall be deemed non-dischargeable and Debtor shall be responsible for payment of the remaining balance of the Supplemental Claim following the entry of a Discharge.

L. **SECURED CLAIMS – POST-PETITION FEES, COSTS AND CHARGES:**

1. Any Supplement to Claim that is filed with the Court as to which there is no objection filed or as to which any objection has been overruled, shall be deemed allowed.

2. If Class 4.1, 4.3, 5.1, 5.2, 5.3 or 5.4 provides for the Creditor's Secured Claim to be paid by the Trustee, the Supplement to Claim as filed and allowed shall be paid by the Trustee over the remaining term of the Plan.

3. If Class 4.1, 4.3, 5.1, 5.2, 5.3 or 5.4 provides for the Creditor's Secured Claim to be paid directly by the debtor to the Creditor, the Supplement to Claim as filed and allowed shall be paid directly by the debtor to the Creditor before completion of the Plan. If there is a balance outstanding on the Supplement to Claim as of the completion of debtor's confirmed Chapter 13 Plan, this balance shall not prevent or preclude the entry of a discharge in this case; instead, any unpaid balance shall be non-dischargeable.

M. **SEPARATELY CLASSIFIED UNSECURED CLAIMS:** Claims classified as "Separately Classified Unsecured Claims"are unsecured claims that qualify for discriminatory and preferred treatment pursuant to 11 USC §1322(b)(1). The basis for separate classification is specified in Paragraph III.H of the Plan. Each Separately Classified Unsecured Claims shall receive payments that total 100% of the allowed amount of the claim plus interest if specified in Class Eight of the Plan. *See also Paragraph F of the Additional Terms, Conditions and Provisions for additional information concerning the timing of payments to be made on these claims.*

N. **GENERAL UNSECURED CREDITORS:** Unless Class 9 of the Plan provides a dividend to holders of General Unsecured Claims equal to 100% of allowed claims, the Plan shall produce a total sum for distribution to General Unsecured Creditors (the "Unsecured Base Amount"). The Unsecured Base Amount shall be not less than the aggregate amount which creditors in this class would have received had the estate of the debtor been liquidated under Chapter 7 of Title 11, United States Code. See 11 USC §1325(a)(4). Each holder of a duly filed and allowed General Unsecured Claim shall receive the holder's *pro rata* share of the Unsecured Base Amount, based on the Creditor's Claim as a fraction of the total General Unsecured Claims duly filed and allowed. The *pro rata* dividend for each holder of an allowed unsecured claim will be calculated by the Trustee upon review of allowed claims.

This Plan shall provide either the total Unsecured Base Amount or shall continue for the Plan Length as stated in Paragraph II.A of the Plan, whichever will offer the greater dividend to general unsecured creditors.

O. **VESTING, POSSESSION OF ESTATE PROPERTY AND LIEN RETENTION:** Upon the Effective Date of the Plan, all property of the estate shall vest in the debtor and shall cease to be property of the estate. The debtor shall remain in possession of all property during the pendency of this case unless specifically provided herein, and shall not seek to sell, transfer or otherwise dispose of such property (except in the ordinary course of debtor's business) without prior Court approval.

Local Form 10-24-17 V 1

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com

P.    **SURRENDER OF COLLATERAL:** Those claims that are treated pursuant to 11 USC §1325(a)(5)(C) (surrender of collateral) are so designated in Class 5.5 of the Plan. Upon confirmation, the Automatic Stay and co-debtor Stay is lifted as to the collateral and any creditor holding a lien on the collateral and the collateral shall no longer constitute property of the estate. No disbursements shall be made by the Trustee to any creditor whose claim is secured by the collateral being surrendered unless the holder of such claim files a Proof of Claim (or Amended Proof of Claim) after the Effective Date of the Plan setting forth the amount of any deficiency remaining after disposition of the collateral. Any allowed deficiency claim shall be paid as a general unsecured claim in Class 9 of the Plan. *See Federal Rule of Bankruptcy Procedure 3002.1.*

Q.    **PROHIBITION AGAINST INCURRING POST-PETITION DEBT:** While this case is pending, the debtor shall not incur a debt in excess of $2,000.00 without first obtaining approval of either this Court or of the Chapter 13 Trustee. If the Chapter 13 Trustee stipulates to entry of an Order allowing Debtor to incur post-petition Debt, Debtor shall be permitted to file the Stipulation signed by the Trustee and to submit an Order to the Court on an *ex parte* basis without notice to creditors or other parties in interest.

R.    **UNSCHEDULED CLAIMS:** If an unscheduled proof of claim is filed, the Trustee is authorized to exercise sole discretion to classify the claim into one of the existing classes under this Plan and to schedule the claim for payment within that class, without prejudice to debtor's right to object to the allowance of the claim and/or to modify the plan to provide a different treatment.

S.    **PROOFS OF CLAIM FILED AT VARIANCE WITH THE PLAN:** In the event that a proof of claim is filed and allowed that is at variance with the provisions of this Plan, the following method is to be employed to resolve the conflict:

1. Regarding claims for which the Plan does not propose a "cramdown" or modification, the proof of claim shall supersede the Plan as to the claim amount, percentage rate of interest, monthly payments, valuation of collateral and classification of the claim.
2. As to claims for which the Plan proposes a "cramdown" or modification, the Proof of Claim governs only as to the claim amount. The Plan governs valuation and interest rate.
3. If a Proof of Claim is filed that is at variance with this Plan or related schedules, the Trustee shall automatically treat that claim as the holder indicated, unless provided otherwise in the confirmed Plan; these Additional Terms, Conditions and Provisions; or by Order of Court.
4. As to claims specified in Class 3.1 or Class 3.2 (Secured Claims to be Stripped or Avoided), the Proof of Claim shall control only as to the allowed amount of the claim. *See also Paragraph G of the Additional Terms, Conditions and Provisions for additional information concerning payments to be made on these claims.*

T.    **TAX RETURNS AND TAX SET-OFFS:** All tax returns which have become due prior to the filing of the Plan have been filed. The Internal Revenue Service and the United States Department of Treasury are prohibited from setting off against post-petition Tax Refunds for payment of pre-petition tax obligations.

U.    **DEBTOR DUTY TO MAINTAIN INSURANCE – REMEDY FOR FAILURE TO MAINTAIN INSURANCE:** Debtor shall maintain all insurance required by law and contract upon property of the estate and the debtor's property. After confirmation of this Plan, if the debtor fails to maintain insurance as required by law or contract, any party in interest may submit a notice of default, served on debtor, debtor's counsel and the Chapter 13 Trustee, permitting 10 days from service of the notice in which to cure the default. If the default is not cured within the time permitted, the party in interest may submit an Order Granting Relief from the Automatic Stay as to the collateral to the Court along with an affidavit attesting to the debtor's failure to cure, and the stay may thereafter be lifted without further motion, notice or hearing.

V.    **SECURED CREDITORS, LESSORS AND PARTIES TO EXECUTORY CONTRACTS UPON ENTRY OF ORDER LIFTING AUTOMATIC STAY:** Any secured creditor and any party to an assumed executory contract or unexpired lease as to whom the automatic stay is lifted shall not receive any further disbursements until a proof of claim for the balance remaining after liquidation of the collateral is filed.

W.    **PROVIDING FUTURE TAX RETURNS TO TRUSTEE:** Debtor shall timely file each Federal Income Tax Return required to be filed under applicable law during the pendency of this case, and shall provide to the Trustee a copy of each Return at the same time the Return is filed with the taxing authority.

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

X. **DEADLINES IN EVENT OF CONVERSION:** In the event of conversion of this case to a case under Chapter 7 of the United States Bankruptcy Code, the rights of the Chapter 7 Trustee and all creditors (including but not limited to the right to object to exemptions and the right to object to discharge pursuant to 11 USC §727 and/or dischargeability pursuant to 11 USC §523) will be determined as if the Petition was filed on the date of conversion. The date of the Order converting this case to one under Chapter 7 will be treated as the date of the Order For Relief and all applicable deadlines shall be determined as if the post-conversion Meeting of Creditors pursuant to 11 USC §341 was the initial Meeting of Creditors.

Y. **OBJECTIONS TO PROOFS OF CLAIM:** Any party-in-interest shall have the right to object to Proofs of Claim. Confirmation of this Plan shall not constitute a waiver of any objection and shall not constitute or have any *res judicata* or collateral estoppel effect on or against any objection to Proof of Claim. If any objection to Proof of Claim is filed and sustained, in whole or in part, after the Trustee has begun making disbursements under this plan as confirmed, Trustee shall have no obligation or duty to recoup any payments or disbursements made to the creditor whose Proof of Claim was the subject of the objection.

Z. **CREDITOR'S AUTHORIZATION TO CONTACT DEBTOR:** Notwithstanding the provisions of the Automatic Stay and Co-Debtor Stay, creditors holding claims in Classes 4 and 5 for which the debtor proposes to retain the collateral and parties to any assumed unexpired lease or executory contract in Class 6 may contact Debtor for purposes of sending periodic statements and annual or periodic summaries of accounts including but not limited to account reconciliations pursuant to the Real Estate Settlement Procedures Act.

AA. **IDENTITY OF DISBURSING AGENT:** All claims in all classes of creditors shall be paid by the Trustee as Disbursing Agent except those claims which are specified to be paid directly by either the debtor or a third party, in which event the debtor or third party making those payments shall be the Disbursing Agent for those claims.

BB. **SPECIAL PROVISIONS APPLICABLE TO GOVERNMENTAL UNITS RESPONSIBLE FOR ENFORCING DOMESTIC SUPPORT OBLIGATIONS:** Notwithstanding the provisions of 11 U.S.C. §362 and §1327, the Automatic Stay is modified to permit any governmental unit or agency responsible for enforcing a domestic support obligation to send notices, to take other actions to the extent not inconsistent with the terms of the Plan, and to collect domestic support obligations from property that is not property of the estate.

CC. **PRE- AND POST-PETITION LITIGATION AND CAUSES OF ACTION:** Debtor and the Chapter 13 Trustee shall have concurrent standing to prosecute all Pre- and Post-Petition causes of action, including but not limited to actions arising under Title 11, United States Code. Any compromise or settlement of any litigation or cause of action shall be subject to the provisions of Federal Rule of Bankruptcy Procedure 9019. Any proceeds or damages recovered by or on behalf of the debtor shall be retained pending Order of the Bankruptcy Court.

DD. **SUBSTANTIVE CONSOLIDATION OF JOINTLY FILED CASES:** If this case has been filed jointly by a husband and wife pursuant to 11 USC §302, entry of an Order Confirming Plan shall also constitute an Order for Substantive Consolidation of the debtors.

EE. **NON-APPLICABILITY OF FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1:** The requirements and provisions of Federal Rule of Bankruptcy Procedure 3002.1 shall not apply to any property that the Plan as confirmed surrenders to the Creditor as provided in 11 USC §1325(a)(5)(C); or to any property as to which the Automatic Stay is lifted for purposes of allowing the secured creditor to exercise rights and remedies pursuant to applicable State Law, regardless of whether the Order Lifting Automatic Stay is entered before or after entry of an Order Confirming the Plan.

FF. **TIME TO CURE PARAMOUNT:** For any class of claims where the Months to Cure From Confirmation Date may be specified, if the Plan does not specify the number of months to cure, the Months to Cure From Confirmation Date shall be the Plan Length specified in Paragraph II.A of the Plan. For any class of claims or creditors for which the Plan specifies an Estimated Average Monthly Payment that is inconsistent with or contradicts the Months to Cure From Confirmation Date, the Months to Cure From Confirmation Date controls. The Chapter 13 Trustee is authorized to make any changes to the amount of disbursements to the creditor to implement this provision.

GG. **SECURED CLAIMS EXCLUDED FROM 11 USC § 506 BY THE "HANGING PARAGRAPH" AT THE END OF 11 USC §1325 (a)(9):** Claims treated in Class 5.3 or Class 5.4 are claims that were either (1) incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the

debtor(s), or (2) incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.



**WASHTENAW** COUNTY *Michigan*
1826

## Services

Certified
Vital Records

Register of Deeds
Records

Property/Parcel
Lookup

Map Store

Dog License

🛒 Shopping Cart

Customer Accounts

## Tell Me About...

Convenience Fees

Monthly Accounts

Order Fulfillment

Security

Help Desk

# Washtenaw County Parcel Summary

This information is received from local cities, villages, and townships. For additional information or verification, please contact your local city, village, or township assessor or access their individual Online Assessment and Property Tax web pages here.

Information herein deemed reliable but **not** guaranteed.

### Parcel Identification

| | |
|---|---|
| Parcel Number: | B -02-05-383-002 |
| City, Village, or Township: | TOWNSHIP OF NORTHFIELD |
| Parcel Status: | ACTIVE |
| Property Address Street Number, Name & Direction | 9076 BUTTERNUT DR |
| Property City, State, Zip Code | WHITMORE LAKE  MI,  48189 |
| School District Number & Name | 81140  WHITMORE LAKE PUBLIC SCHO |
| Property Classification | 401  RESIDENTIAL |

### Taxpayer Identification -- Year 2019

| | |
|---|---|
| Taxpayer Name 1: | SAXON STEPHEN (2019) |
| Taxpayer Name 2: | |
| Taxpayer Mailing Address: | 9076 BUTTERNUT |
| Taxpayer City, State, Zip Code: | WHITMORE LAKE,  MI,  48189 |

### Assessment

| Year | State Equalized Value | Taxable Value | Principal Residence Exemption % |
|---|---|---|---|
| 2018 | $80,500.00 | $53,539.00 | 100 |
| 2017 | $77,400.00 | $52,438.00 | 100 |

### Sales

| | | | |
|---|---|---|---|
| Sale Date: | 09/20/2002 | Sale Price: | $134,000.00 |
| Liber-Page: | L4219 P478 | Last Update: | |

1 of 1

| Delinquent Tax | Legal Description | Sales History | View All Reports | Printer Friendly |
|---|---|---|---|---|
| Search Results | Refine Search | New Search | | |



Home | About Washtenaw County
© 2018 Washtenaw County, MI | Privacy Policy



EXHIBIT
A
tabbies®

OFFICIAL SEAL                    Washtenaw Co., MI
                11/22/06   Lawrence Kestenbaum
L-4593  P-797                    Clerk Register

                                                    Page: 1 of 4



ACS-5760235-11-2006-4                              11:54 A
Lawrence Kestenbaum, Washtenaw            11/22/06
                                          L-4593  P-797

# MORTGAGE

THIS MORTGAGE is made this     17th     day of     November     , 2006     , between the Mortgagor,
STEPHEN SAXON AND MELISSA SAXON HUSBAND AND WIFE

                                                                , whose address is
9076 BUTTERNUT                    WHITMORE LAKE MI 48189          (herein "Borrower").
and the Mortgagee, CITIFINANCIAL, INC.
a corporation organized and existing   under the laws of Maryland     and qualified to do business in
Michigan, whose address is 202 BROOKSIDE LANE   BRIGHTON MI 48116
(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S.$   20,356.46, which indebtedness is
evidenced by Borrower's note dated 11/17/2006  and extensions and renewals thereof (herein "Note"), providing for
monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable
on 12/01/2026 ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the
payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this
Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby
mortgage, grant and convey to Lender, with power of sale, the following described property located in the
County of          WASHTENAW , State of Michigan:

    TAX ID# B02-05-383-002

    THE FOLLOWING DESRIBED PREMISES SITUATED IN THE TOWNSHIP OF NORTHFIELD
    , COUNTY OF WASHTENAW, AND STATE OF MICHIGAN: LOTS 1011,1012,1013, AND
    1014, WHITMORE LAKE SUMMER HOMES, ACCORDING TO THE RECORDED PLAT
    THEREOF, AS RECORDED IN LIBER 4 OF PLATS, PAGE 6, WASHTENAW COUNTY
    RECORDS.
    BEING THE SAME PROPERTY CONVEYED BY FEE SIMPLE DEED FROM MALBOURNE
    HARRY CLEMENTS, JR. SINGLE TO STEPHEN SAXON AND MELISSA SAXON HUSBAND
    AND WIFE, DATED 09/20/2002 RECORDED ON 02/13/2003 IN LIBER 4219, PAGE
    478 IN WASHTENAW COUNTY RECORDS, STATE OF MI.

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage;
and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are
hereinafter referred to as the "Property".

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower
covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to encumbrances of record.

MELISSA L SAXON    STEPHEN SAXON

11:54 A
11/22/06

ACS-5760235-M-2006-4
Lawrence Kestenbaum, Washtenaw    L-4583  P-797

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a

ACS-5760235-M-2006-4
Laurence Kestenbaum, Washtenaw                    L- 4593   P- 797

MELISSA L SAXON     STEPHEN SAXON

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of

ACS-5760235-M-2806-4

cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage,

Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the

removal or other remediation of any Hazardous Substance affecting the Property is necessary,

As used in this paragraph 21, "Hazardous Substances" are those substances defined as toxic or hazardous

### REQUEST FOR NOTICE OF DEFAULT

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has

foreclosure action.

STATE OF MICHIGAN　　Washtenaw　　　　　　　　　　　County ss:

by

Notary Public. GENESEE　　　　　　　　　　　　　, County, Michigan

A. Evans　　　　　　　202 BROOKSIDE LANE　　　NOTARY PUBLIC GENESEE CO., MI

COUNTY OF

OFFICIAL SEAL          Washtenaw Co., MI
**05/09/07** Lawrence Kestenbaum
L-4624 P-235          Clerk Register

Page: 1 of 5



04:00 P
05/09/07
AC9-5790769-M-2007-5
Lawrence Kestenbaum, Washtenaw          L- 4624 P- 235

# THIS IS A FUTURE ADVANCE MORTGAGE

11784841

This document was prepared by ~~Cassandra~~ National City
6750 Miller Road Loc. #7120
Brecksville, Ohio 44141
Prepared By: Cassandra D Klapperich

**1. DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ____4/04/2007____ _____ and the parties, their addresses and tax identification numbers, if required, are as follows:

MORTGAGOR STEPHEN SAXON AKA STEPHEN J SAXON AND MELISSA SAXON AKA MELISSA L SAXON, HUSBAND

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

LENDER:     National City Bank
            6750 Miller Road
            Brecksville, Ohio 44141

**2. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, sells, mortgages and warrants to Lender, with the power of sale, the following described property:

See Attached Exhibit A

The property is located in WASTITENAW _____ County a 9076 BUTTERNUT RD _____ _____

WHITMORE LAKE _____          _____ , Michigan 48189-9519 _____

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

**3. MAXIMUM OBLIGATION LIMIT.** The maximum principal amount, excluding protective advances, secured by this Security Instrument at any one time shall not exceed $ ____$10,000.00____ . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Protective advances are defined by law and include an expenditure or expenditures such as advances made under the terms of this Security Instrument to protect Lender's priority and advances made to fulfill or perform an obligation of the Mortgagor under this Security Instrument, with respect to the mortgaged property, that the Mortgagor has failed to fulfill or perform.

Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of

**5. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**6. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, mortgage, and warrant, with the power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**7. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
A. To make all payments when due and to perform or comply with all covenants.
B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**8. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**9. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF RENTS.** Except as otherwise provided in this section, Mortgagor irrevocably grants, bargains, conveys, sells, mortgages, and warrants to Lender as additional security all the right, title and interest in and to any and all rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases"). Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument.

Mortgagor agrees that this assignment is effective immediately upon the execution of this Security Instrument and perfected upon the recording of this Security Instrument. Mortgagor agrees that this assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Mortgagor agrees that Lender may take actual possession of the property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Mortgagor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require

**14. DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**15. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents including without limitation, the power to sell the Property.

If there is a default, Lender may, in addition to any other permitted remedy, invoke the power of sale and sell the Property as a single parcel or in such parcels (and in such order) as the Lender may direct at public sale to the highest bidder. If Lender invokes the power of sale, Lender shall give notice of the sale as prescribed by applicable law in effect at the time of the proposed sale. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the manner prescribed by applicable law.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:
A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.
D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.
All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and,

**20. ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

**22. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

**23. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

**25. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

**26. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.
☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.
☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.
☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
　☐ Condominium Rider ☐ Planned Unit Development Rider ☐ Other_____
☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_(Signature)_ _____ 04/04/07 _(Date)_　　_melissa d. Saxon (Signature)_ _____ 04/04/07 _(Date)_

STEPHEN J SAXON　　　　　　　　　　melissa Saxon
　　　　　　　　　　　　　　　　　　MELISSA L SAXON

**ACKNOWLEDGMENT:**

STATE OF MICHIGAN, COUNTY OF _Washtenaw_ ) ss.

_(Individual)_ This instrument was acknowledged before me this _4_ day of _April 2007_

by _Stephen Saxon aka Stephen J. Saxon and Melissa Saxon aka Melissa L. Saxon_

Page: 5 of 5

ACS-5790769-M-2007-5
Lawrence Kestenbaum, Washtenaw

L-4624 P-235

EXHIBIT A


A PARCEL OF LAND LOCATED IN THE TOWNSHIP OF NORTHFIELD,
COUNTY OF WASHTENAW, STATE OF MICHIGAN, AND KNOWN AS:

BEING LOT NUMBER 1011, 1012, 1013 AND LOT NUMBER 1014 IN
WHITMORE LAKE SUMMER HOMES AS SHOWN IN THE RECORDED PLAT/MAP
THEREOF IN LIBER 4 OF PLATS PAGE 6 OF WASHTENAW COUNTY
RECORDS.

Permanent Parcel Number:  B-02-05-383-002
STEPHEN SAXON AND MELISSA SAXON, HUSBAND AND WIFE

9076 BUTTERNUT ROAD, WHITMORE LAKE MI 48189-9519
Loan Reference Number  :  56-404-113273903/023197667
First American Order No:  11784841
Identifier: FIRST AMERICAN LENDERS ADVANTAGE



When recorded mail to:
*FIRST AMERICAN TITLE INSURANCE*
*LENDERS ADVANTAGE*
*1100 SUPERIOR AVENUE, SUITE 200*
*CLEVELAND, OHIO 44114*
*ATTN: FT1120*

SUBMITTED
FOR RECORDING

MAY 0 9 2007

Washtenaw County MI
Clerk Register's Office

6366057 L: 5199 P: 360 M
Total Pages: 4 03/29/2017 08:58 AM
Lawrence Kestenbaum
Washtenaw County, Michigan



MORTGAGE
HELP FOR HARDEST HIT

MICHIGAN HOMEOWNER ASSISTANCE NONPROFIT HOUSING CORPORATION
Acting Through

MICHIGAN STATE HOUSING DEVELOPMENT AUTHORITY
735 East Michigan Avenue
Lansing, Michigan 48912

THIS MORTGAGE, made and entered into this __15th__ day of _____March_____, __2017__ by
__Stephen Saxon & Melissa Saxon__

_____,

__a married couple__
whose address is _____9076 Butternut Dr., Whitmore Lake, MI 48189_____

(herein referred to as the "Mortgagor"); and the Michigan Homeowner Assistance Nonprofit
Housing Corporation, whose address is 735 East Michigan Avenue, Lansing, Michigan 48912 (herein
referred to as the "Mortgagee").

WITNESSETH:

WHEREAS, the Mortgagor is justly indebted to the Mortgagee in the principal sum of
____Seventeen Thousand Eight Hundred Eighty Four and 19/100____ Dollars ($__17,884.19__ )
(the "Debt") evidenced by a Mortgage Note ( the "Note") made on _____March____ __15__ __2017__ .
Said Note and all of its terms are incorporated herein by reference and this Mortgage shall secure any and all extension
thereof, however evidenced.

THIS IS A FUTURE ADVANCE MORTGAGE.  THE MAXIMUM PRINCIPAL AMOUNT, EXCLUDING
"PROTECTIVE ADVANCES" AS DEFINED IN MICHIGAN COMPILED LAWS 565.901(C), THAT MAY
BE SECURED BY THIS MORTGAGE IS $__17,884.19__

NOW, THEREFORE, the said Mortgagor, for the better securing of the payment of such principal sum of
money and the performance of the covenants and agreements herein contained does hereby MORTGAGE AND
WARRANT unto the Mortgagee, its successors or assigns, the lands, premises and property (the "Property")
situated in the _____Township_____ of _____Northfield_____ , County of
_____Washtenaw_____ , and State of Michigan, described as follows,

H4HH (04-13)                          Page 1 of 4                          Initials  SS
Mortgage                                                                              MS

to wit:
Lots 1011 - 1014 Whitmore Lake Summer Homes according to the recorded Plat thereof as recorded in Liber 4 of Plats Page 6.  Northfield Township County of Washtenaw.

Parcel number: 02-05-383-002

TOGETHER with the privileges and appurtenances belonging to the Property, and all of the rents, issues, and profits which may arise or be had therefrom.

TO HAVE AND TO HOLD the above-mortgaged premises, together with all buildings, improvements, and fixtures, to the said Mortgagee forever, provided that if the Mortgagor shall pay the principal and any interest as provided in the Note executed by the Mortgagor to the Mortgagee and shall pay all other sums hereinafter provided for, and shall keep and perform all of the covenants herein contained, then this Mortgage and the Note shall be null and void; otherwise to remain in full effect.

AND the Mortgagor hereby covenants as follows:

1.  The Mortgagor will pay the Note at the times and in the manner provided therein.

2.  So long as this Debt is unpaid, if the Property is sold or transferred, or ceases to be the principal residence of the Mortgagor, without the Mortgagee's prior written consent, or if the Mortgagor repays in full any mortgage loans encumbering the Property that are senior to this Mortgage, such act shall be deemed a breach of a covenant in this Mortgage and all the sums secured by the Mortgage shall be immediately due and payable. In the event the primary lien is paid in full due to a no cash out, limited-term, refinance, MHA may subordinate lien position in accordance with program guidelines. For purposes of this Mortgage, the words "sold or transferred," individually or together, specifically include, but are not limited to, an outright sale, sale on a land contract, sale with an assumption of the Mortgage, sale with wrap around financing, transfer by operation of law either upon the death of the Mortgagor or otherwise, and leasing of the Property.

3.  The Mortgagor will not permit or suffer the use of the Property for any purpose other than Mortgagor's principal place of residence.

4.  The Mortgagor will pay before the same become delinquent or subject to interest or penalties, all taxes, assessments, water rates, and all other charges and encumbrances which now are or shall hereafter be or appear to be a lien upon the Property (unless otherwise agreed to in writing), and that in default thereof, the Mortgagee may, without demand or notice, pay the said taxes, assessments, charges or encumbrances, and pay such sum of money as the Mortgagee may deem to be necessary therefor, and shall be the sole judge of the legality or validity thereof and of the amount necessary to be paid in satisfaction thereof.

5.  The Mortgagor will keep the improvements now existing or hereafter erected on the Property insured against loss by fire and such other hazards, casualties, and contingencies as may be stipulated by the Mortgagee, unless otherwise agreed in writing.

6.  The Mortgagor will not permit or commit any waste on the Property and will keep the buildings thereon and all equipment therein mortgaged, if any, in good repair, and promptly comply with all laws, ordinances, regulations, and requirements of any governmental body affecting the Property, and should the Property or any part

H4HH  (04-13)                          Page 2 of 4                          Initials  SS
Mortgage                                                                              MS

thereof require inspections, repair, care, or attention of any kind or nature not provided by the Mortgagor, or by another party responsible therefore the Mortgagee, being hereby made sole judge of the necessity therefor may, after notice to the Mortgagor, enter or cause entry to be made on the Property, and inspect, repair, protect, care for or maintain the Property as the Mortgagee may deem necessary, and may pay such sum of money as the Mortgagee may deem to be necessary therefore and shall be the sole judge of the amount necessary to be paid.

7.  Should any default be made in the covenants of this Mortgage, the Mortgagee may cause the abstract or abstracts of title, or Title Insurance Policy and the tax histories of the Property to be certified to date, or may procure new abstracts of title or Title Insurance Policies and tax histories or title search in case none were furnished to the Mortgagee, and may pay therefore such sums as it may deem to be necessary, and if unpaid, may pay any mortgage tax on this instrument, and shall be the sole judge of the amount necessary to be paid therefor.

8.  The Mortgagor shall pay the Mortgagee forthwith the amounts of all sums of money, which the Mortgagee shall pay or expend pursuant to the provisions of the Note and this Mortgage, and such payments by the Mortgagee shall be a further lien on the Property under this Mortgage.

9.  Should any default be made in the payment of principal, or should default be made in the performance of any other covenants of this Mortgage or the Note, or any part thereof, when the same is payable or the time of performance has arrived, as above provided, then all sums due hereunder shall, at the option of the Mortgagee, without notice, become immediately payable thereafter, although the period above limited for the payment thereof may not have expired, anything herein contained or contained in the Note to the contrary notwithstanding, and any failure to exercise such option shall not constitute a waiver of the right to exercise the same at any other time with respect to the same default or any subsequent default. Upon any such default, the Mortgagee may invoke the power of sale provided below or exercise any other remedy available under applicable law.

10.  No forbearances on the part of the Mortgagee and no extension of the time for the payment of the debt hereby secured, given by the Mortgagee, shall operate to release, discharge, modify, change or affect the original liability of the Mortgagor herein either in whole or in part.

11.  This Mortgage contains a Power of Sale and upon default may be foreclosed by advertisement as herein provided. Upon default being made in the payment of the sums of money herein agreed to be paid, or in the performance of any of the covenants or agreements herein contained according to the terms hereof or of the Mortgage Note secured hereby, the holder of the Mortgage Note is hereby authorized and empowered to sell the Property or cause it to be sold and to convey the same to the purchaser in any lawful manner, including but not limited to that provided in Chapter 32 of the Revised Judicature Act (MCL 600.3201, *et seq.*) entitled "Foreclosure of Mortgage by Advertisement," which permits the mortgage holder to sell the Property without affording the Mortgagor a hearing, or giving the Mortgagor personal notice; the only notice required is to publish notice in a newspaper of general circulation in the county in which the Property is located and to post a copy of the notice on the Property.

12.  The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective successors and assigns of the parties hereto.

Property address: 9076 Butternut Dr., Whitmore Lake, MI 48189

H4HH (04-13)                          Page 3 of 4
Mortgage                                                                                Initials  SS
                                                                                                  MS

IN WITNESS WHEREOF, the Mortgagor has caused these presents to be signed as of the day and year first above written.

_____
Mortgagor
Stephen Saxon

_____
Mortgagor

_____
Mortgagor
Melissa Saxon

_____
Mortgagor

STATE OF MICHIGAN                    )
County of Washtenaw                  )

The foregoing instrument was acknowledged before me on this 23 day of march, 2017 by Stephen Saxon & Melissa Saxon

Notary Public's Signature: Krista Mattson
Notary Public's Name: Krista Mattson
State of Michigan, County of: Livingston
My Commission Expires: 10/17/2021
Acting In: Washtenaw

Drafted By and Return To:
Stacey Place
Step Forward Michigan
George W Romney Bldg, 8th Floor
111 S Capitol Ave
Lansing, MI 48933

KRISTA MATTSON
NOTARY PUBLIC, STATE OF MI
COUNTY OF LIVINGSTON
MY COMMISSION EXPIRES Oct 17, 2021
ACTING IN COUNTY OF Washtenaw

TES

70189

H4HH  (04-13)
Mortgage

Page 4 of 4

Initials SS
MS



**TROTT/LAW**
A PROFESSIONAL CORPORATION

HEADQUARTERS:
31440 Northwestern Hwy., Suite 145
Farmington Hills, Michigan 48334
(248) 642-2515 / fax (248) 642-3628

GRAND RAPIDS:
4024 Park East Court, Suite B
Grand Rapids, Michigan 49546
(616) 942-0893 / fax (616) 942-0921

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.

July 05, 2018

Stephen Saxon and Melissa Saxon
9076 Butternut Rd
Whitmore Lake, MI 48189-9519

RE: Saxon, Stephen
9076 Butternut Rd
Whitmore Lake, MI 48189-9519
Trott #  483822F01
Loan #  1120297726
#2001354725

Dear Borrower(s):

This office represents CitiMortgage Inc.. This matter was referred to this office to foreclose the mortgage. Under the terms of the mortgage, our client has elected to accelerate the total indebtedness.  Because of interest, fees, and other charges, the total amount you owe may increase depending on the day of payment.

As of the date on this letter the total indebtedness is:

| | |
|---|---|
| Principal Balance | $166,774.42 |
| Unpaid Interest | $9,686.12 |
| Escrow Advance | $3,063.10 |
| *Total:* | **$179,523.64** |

Identification of Creditor: The mortgage debt is owed to US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR CRMSI REMIC SERIES 2006-02 - REMICPASS-THROUGH CERTIFICATES SERIES 2006-02. CitiMortgage Inc. is the servicer of the debt. The mortgage loan payments are made to the servicer.

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within thirty (30) days after receiving this notice that you dispute the validity of this debt, this office will obtain verification of the debt or a copy of the judgment, if applicable, and mail a copy of such verification or judgment to you.  If you request, in writing, within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please contact this office if you are on active military duty.  To the extent the debt has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

An attorney has reviewed information supplied by our client in preparation of this letter.

Trott Law P.C.
Regular business hours:  8:30 a.m. - 5:00 p.m.

Notice of Foreclosure by Advertisement

NOTICE is hereby given pursuant to MCL 600.3212, that the following will be foreclosed by a sale of the mortgaged premises, or some part of them, at public auction at the place of holding the circuit court within Washtenaw County, at 10:00 AM, on August 16, 2018:

Name(s) of the mortgagor(s):    Stephen Saxon aka Stephen John Saxon and Melissa Saxon aka Melissa Lynne Saxon, husband and wife
Original Mortgagee:    Citicorp Trust Bank, FSB
Foreclosing Assignee (if any):   US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR CRMSI REMIC SERIES 2006-02 - REMIC PASS-THROUGH CERTIFICATES SERIES 2006-02
Date of Mortgage:         February 18, 2006
Date of Mortgage Recording:    February 22, 2006
Amount claimed due on date of notice: $181,186.59

Description of the mortgaged premises: Situated in Township of Northfield, Washtenaw County, Michigan, and described as: Lots 1011, 1012, 1013 and 1014 Whitmore Lake Summer Homes according to the recorded plat thereof as recorded in Liber 4 of Plats Page 6 Washtenaw County Records.

The redemption period shall be 6 months from the date of such sale, unless determined abandoned in accordance with MCLA 600.3241a; or, if the subject real property is used for agricultural purposes as defined by MCL 600.3240(16).

If the property is sold at foreclosure sale under Chapter 32 of the Revised Judicature Act of 1961, pursuant to MCL 600.3278 the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period.

This notice is from a debt collector.

Date of notice: July 19, 2018
Trott Law, P.C.

 **PNC BANK**  B6-YM07-01-7
PO Box 1820
Dayton OH 45401-1820

 pnc.com

2-749-73743-0036520-008-1-000-100-000-000

 STEPHEN J SAXON
9076 BUTTERNUT RD
WHITMORE LAKE MI 48189-9519

Customer Service: **1-888-762-2265**

| | |
|---|---|
| Account Number | 7500809038 |
| **Payment Date** | **08/19/2018** |
| **Payment Amount** | **$4,400.94** |

### Bankruptcy Message

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your account in bankruptcy.**

**We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.**

If you want to stop receiving statements, write to us at: PNC Bank, PO Box 94982, Cleveland, OH 44101 or call us at 855-245-3814

### Explanation of Payment Amount

| | |
|---|---|
| Regular Monthly Payment | $4,400.94 |
| Past Unpaid Amount | $4,400.94 |
| **Total Payment Amount** | **$4,400.94** |

### Account Information

| | |
|---|---|
| Outstanding Principal | $4,167.20 |
| Interest Rate | 0.00000% |

### Transaction Activity for the period of (06/29/2018 to 07/27/2018)

There has been no transaction activity since the last statement.

### Past Payments Breakdown

| | Paid Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

### **Account History**

*Recent Account History*
- Payment Due 02/19/2018: Unpaid balance of $4,400.94
- Payment Due 03/19/2018: Unpaid balance of $4,400.94
- Payment Due 04/19/2018: Unpaid balance of $4,400.94
- Payment Due 05/19/2018: Unpaid balance of $4,400.94
- Payment Due 06/19/2018: Unpaid balance of $4,400.94
- Payment Due 07/19/2018: Unpaid balance of $4,400.94
- Current payment due 08/19/2018: $0.00
- **Total: $4,400.94 unpaid amount that, if paid, would bring your account current.**

**If You Are Experiencing Financial Difficulty,** See page 2 for information about account counseling or assistance.

MELISSA L SAXON
YOUR ACCOUNT NUMBER: 67200051-0274947
Questions? Call (800) 698-4721

Due Date: 05/01/16

**Amount Due**
**$ 1,294.32**

**Your Servicing Center**
CitiFinancial
PO BOX 70918
CHARLOTTE, NC 28272

**(800) 922-6235**
**CitiFinancialServicing.com**

| EXPLANATION OF AMOUNT DUE: | | | ACCOUNT INFORMATION: | | |
|---|---|---|---|---|---|
| Principal | +$ | 64.30 | Outstanding Principal Balance* | $ | 18,057.17 |
| Interest | +$ | 151.42 | Escrow Balance | | N/A |
| Escrow | + | N/A | Escrow Advance Balance | | N/A |
| Optional Insurance | + | N/A | Interest Rate | | 11.4024% |
| **Scheduled Payment Amount** | **$** | **215.72** | Interest Rate Effective through: | | 12/01/26 |
| | | | Interest year to Date | $ | 0.00 |
| Fees/Charges Since Last Statement | +$ | 0.00 | Prior Year's Interest | $ | 1,818.07 |
| Past Due Loan Payment(s) | +$ | 1,078.60 | Property Taxes YTD | | N/A |
| Past Due Optional Insurance | + | N/A | Scheduled Maturity Date | | 12/01/26 |
| Past Due Fees and Charges | +$ | 0.00 | Prepayment Penalty | | N |
| **TOTAL PAYMENT DUE** | **$** | **1,294.32** | *Not a payoff balance; call us for details | | |

For transaction details, including how payments received were applied, please see next page.
The principal and interest amounts listed under Explanation of Amount Due assume that all payments are made on their scheduled payment due dates.

PAST PAYMENTS BREAKDOWN: (If this section is blank, then the information will be shown on your next regular monthly statement.)

| | Paid Last Month | | Paid Year to Date | |
|---|---|---|---|---|
| Principal | $ | 0.00 | $ | 0.00 |
| Interest | $ | 0.00 | $ | 0.00 |
| Escrow | $ | 0.00 | $ | 0.00 |
| Fees/Add-ons | $ | 0.00 | $ | 0.00 |
| **Total** | **$** | **0.00** | **$** | **0.00** |

# Let's work together to find a solution.

We understand that your payments can seem overwhelming. But falling behind on more payments can put your credit standing at risk. If you're having trouble, we're here to help. We may be able to set up a repayment schedule to help you get back on track. Don't let a minor problem turn into a major one - give us a call today.

citi financial®

*Today's Solutions.*
*Tomorrow's Dreams.®*

www.citifinancialservicing.com

## Notices and Disclosures...

If this debt was included in a bankruptcy action or was discharged, this mortgage account statement is for informational purposes only and is not an attempt to collect, recover or offset the mortgage indebtedness against you personally. This is not a bill or a request for payment or a statement that you are personally obligated in any way to make a payment.

---

ACCOUNT NUMBER: 67200051-0274947

citi financial®
P O BOX 70918
CHARLOTTE NC 28272

**Address Service Requested**

SUSCFENP 00013337
2016103

Please mail this coupon with
your payment.

Indicate address corrections on
the reverse side.

| Total Payment Due | $ | 1,294.32 |
|---|---|---|
| **Payment Due Date** | | **05/01/16** |

Amount enclosed: $

3200388059 1 AT 0.399 XO123458 TMN 013714 1836

MELISSA L SAXON
STEPHEN SAXON
PO BOX 325
WHITMORE LAKE MI 48189-0325

CITIFINANCIAL
PO BOX 9001082
LOUISVILLE KY 40290-1082

21000 0021572 0129432 0000000 0067200050274947 0005